**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**
*Electronically Filed*

| | |
|---|---|
| CHERYL CARNEVALE,<br>KIMBERLY COLOMBO,<br>STEPHEN DANIELS,<br>HEZRON FARRELL,<br>GWENDOLYN FARRELL,<br>ADRIANA GUZMAN,<br><br>                  Plaintiffs,<br><br>   v.<br><br>THE BOEING COMPANY, a Delaware<br>Corporation, and DOES 1-100,<br><br>**SERVE:**<br>**The Boeing Company**<br>**Corporation Service Company**<br>**84 State Street, Boston MA 02109**<br>**(Registered Agent for The Boeing Company)**<br><br>               Defendants. | **Civil Action No.**<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

Plaintiffs Cheryl Carnevale, Kimberly Colombo, Stephen Daniels, Hezron Farrell, Gwendolyn Farrell, and Adriana Guzman, by and through their undersigned counsel, bring this action against Defendant The Boeing Company ("Boeing), and for their Complaint and Jury Demand, state the following:

### THE PARTIES

1.  Plaintiff Cheryl Carnevale (hereinafter "Plaintiff-Carnevale") was, at all relevant

times herein a resident and citizen of Providence County, Rhode Island with a street address of 55

Scituate Avenue, Johnston, RI  02919-6026.  Plaintiff-Carnevale was a passenger on the subject

flight.

2.   Plaintiff- Kimberly Colombo (hereinafter "Plaintiff-Colombo") was,

at all times herein, a resident of Essex County, Massachusetts with a street address of 10 Pettingill

Street, Andover, MA  01810-1204.  Plaintiff-Colombo was a passenger on the subject flight;

3.   Plaintiff Stephen Daniels (hereinafter "Plaintiff Daniels") was, at all times herein, a

resident of Essex County with a street address of 88 King Street, Groveland, MA  01834-1812.

Plaintiff-Daniels was a passenger on the subject flight.

4.   Plaintiff Hezron Farrell (hereinafter "Plaintiff Hezron Farrell") was, at all times

herein, a resident a resident of Suffolk County, Massachusetts with a street address of 12 Bradlee

Park, Hyde Park, MA  02136-3245.  Plaintiff-Hezron Farrell was a passenger on the subject flight.

5.   Plaintiff Gwendolyn Farrell (hereinafter "Plaintiff Gwendolyn Farrell") was, at all

times herein, a resident of Suffolk County, Massachusetts with a street address of 12 Bradlee Park,

Hyde Park, MA  02136-3245.  Plaintiff-Gwendolyn Farrell was a passenger on the subject flight.

6.   Plaintiff Adriana Guzman (hereinafter "Plaintiff Guzman") was, at all

times herein, a resident of San José, Costa Rica, with a street address of Guadalupe 10801，San

José, Costa Rica.  Plaintiff- Guzman was a passenger on the subject flight.

7.   Defendant Boeing manufactured the subject Boeing 757-223 aircraft

FAA registration number N626AA, serial number 24584 ("subject aircraft").

8.   Defendant Boeing, at all times material hereto, assumed all responsibility for

providing inspection, repair, service, maintenance, replacement, overhaul, warnings, parts, instructions, maintenance manuals, continuing airworthiness information, and other information with respect to the Boeing 757-223 line aircraft.

9.    Defendant Boeing, at all times material hereto, was involved in the design, engineering, manufacturing, assembly, testing, marketing, distributing and/or selling of the Boeing 757-223 jet aircraft.

10. Defendant Boeing is the type certificate holder of the Boeing 757 aircraft line.

11. Defendant Boeing warrants that the 757 aircraft may be utilized safely for a time period in excess of twenty years.

12. The subject aircraft, serial number 24584, was delivered new to American Airlines on August 14, 1990.

13. The true names and capacities of the defendants sued under the fictitious names of "DOE 1" through "DOE 100" are not presently known to Plaintiffs. Plaintiffs will seek to amend the complaint to substitute the true names of said defendants in place of these fictitious names once those identities are ascertained.

### JURISDICTION AND VENUE

14. Subject matter jurisdiction is founded upon complete diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

15.   Plaintiffs Colombo, and Daniels are residents of the Commonwealth of Massachusetts.

16. Defendant Boeing is a corporation organized under the laws of the State of Delaware, it maintains its principal place of business in the State of Illinois, and it is engaged in business within the Commonwealth of Massachusetts.

17. Defendant Boeing engages in continuous and systematic business activity and does

otherwise transact and conduct business in Massachusetts and derives substantial revenue from

business in Massachusetts such that the requirements from general and or specific jurisdiction, together

with the requisite minimum contacts are satisfied..

18. The parties are citizens of different states.

19. The amount in controversy exceeds $75,000.00, exclusive of costs.

20. Venue in this District satisfies the requirements of 28 U.S.C. § 1391, in that the

Defendant Boeing resides within and/or is subject to personal jurisdiction because it transacts business

in this District.

## FACTUAL ALLEGATIONS

21. On October 26, 2010, at about 2130 eastern daylight time, a rapid decompression

occurred on board American Airlines flight 1640, a Boeing 757-223, Federal Aviation Administration

(FAA) registration number N626AA.

22. On that date, while Flight 1640 climbed through 32,00 feet after departure from

Miami International Airport (MIA), Miami, Florida bound for Boston Logan International Airport,

Boston, Massachusetts, a hole suddenly appeared above the left passenger door.

23. The Plaintiffs experienced an explosion and a huge roar as the cold air rushed

through the hole in the plane.  Plaintiffs feared for their lives as oxygen masks fell and panic ensued.

24. Plaintiffs Hezron and Gwendolyn Farrell experienced immediate ear pain and pressure.

Their ear drums burst and they now suffer permanent hearing loss.

25. Plaintiff Daniels also experienced immediate sharp ear pain and pressure in his

left ear following the explosion.  The pain continued for two days along with a constant high pitched

noise in the same ear, which continues to date.

26.   Plaintiff Colombo also experienced immediate pain and pressure in her ears and sinuses. She also started bleeding out of her nose. She had pain in her temples that felt like a dagger stabbing her. She was panicked due to the pain.  Additionally, her mask was not going in and out, she thought she was not getting enough oxygen. She had an ear ache and major headache for several days and saw a doctor who determined she had suffered a broken blood vessel.

27.   Plaintiffs Guzman and Carnevale experienced varying degrees of emotional distress during the flight requiring psychological counseling after the flight, due to the events that occurred.

28.   The flight crew executed an emergency descent and returned to Miami International Airport.

29.   At Miami International Airport, a ground inspection of the airplane revealed a section of the fuselage crown skin, measuring approximately eighteen inches by seven inches, had ruptured just above the aft of the forward left passenger (L1) door.

30.   The captain declared an emergency with Miami Center and the aircraft landed.

31.   Cockpit Voice Recorder data indicated that the flight and cabin crewmembers followed prescribed operational procedures following the rapid decompression, emergency descent, and landed at Miami International Airport (MIA).

32.   An inspection revealed that a hole measuring eighteen-inches in the longitudinal direction by seven-inches in the circumferential direction was located in the upper fuselage crown skin just above and aft of the L1 door.  The forward thirteen-inch-by-seven-inch section of the ruptured skin remained attached to the airplane by the upper edge and flapped upward.  The aft five-inch-by-seven-inch section of the ruptured skin separated from the aircraft during the rapid decompression and was not recovered.

33.   The skin that ruptured measured 0.034 to 0.035 inches.

34.  The minimum thickness for this skin specified by Boeing is 0.037 inches.

35.  On November 22, 2010 Boeing issued Service Bulletin (SB) 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, which called for repetitive external inspections (at 30, 200, or 300 flights depending on the inspection method) to detect cracks in the brown fuselage skin along the chemically milled step at stringers S-4L (left) and S-4R (right) and between body stations 297 and body station 439.

36.  On January 10, 2011, the Federal Aviation Administration issued Airworthiness Directive (AD) 2011-01-15, mandating the inspection requirements in SB 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.

37.  At least two additional airplanes (a United Airlines 757 and an American Airlines 757) experienced cracking in the fuselage crown skin similar to the subject aircraft.

38. Defendant Boeing's failure to manufacture its fuselage skin on the subject aircraft to the appropriate thickness and or strength constitutes a manufacturing and or design defect.

39. As a result of the aforementioned product defect Defendant Boeing proximately caused injuries and damages to Plaintiff-Carnevale, including but not limited to (a) severe mental, physical and emotional injuries , (b) past and future medical expenses, (c) past and future pain and suffering, (d) past and future emotional distress, (e) past and future loss of enjoyment of life, (f) past and future disability, (g) trauma, (h) fear, (i) fright, (j) embarrassment, (k) and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.  As of the date of this Complaint for damages, Plaintiff Carnevale has not recovered from her injuries.

40. As a result of the aforementioned product defect Defendant Boeing proximately caused injuries and damages to Plaintiff Kimberly Colombo, including but not limited to (a) severe mental, physical, and emotional injuries, (b) past and future medical expenses, (c) past and future pain and suffering, (d) past and future emotional distress, (e) past and future loss of enjoyment of life, (f) past and future mental disability, (g) trauma, (h) fear, (i) fright, (j) embarrassment, (k) and any

and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial. As of the date of this Complaint for damages, Plaintiff Kimberly Colombo has not recovered from her injuries.

41. As a result of the aforementioned product defect The Boeing Company proximately caused injuries and damages to Plaintiff Daniels, including but not limited to (a) permanent hearing loss and tinnitus, (b) mental and emotional injuries, (c) past and future medical expenses, (d) past and future pain and suffering, (e) past and future emotional distress, (f) past and future loss of enjoyment of life, (g) past and future mental disability, (h) trauma, (i) fear, (j) fright, (k) embarrassment, (l) and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.   As of the date of this Complaint for damages, Plaintiff Daniels has not recovered from his injuries, which are therefore alleged to be permanent in nature.

42. As a result of the aforementioned product defect The Boeing Company proximately caused injuries and damages to Plaintiff Hezron Farrell, including but not limited to (a) ruptured ear drum and permanent hearing loss, (b) mental and emotional injuries, (c) past and future medical expenses, (d) past and future pain and suffering, (e) past and future emotional distress, (f) past and future loss of enjoyment of life, (g) past and future mental disability, (h) trauma, (i) fear, (j) fright, (k) embarrassment, (l) and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.  As of the date of this Complaint for damages, Plaintiff Hezron Farrell has not recovered from his injuries, which are therefore alleged to be permanent in nature.

43. As a result of the aforementioned product defect The Boeing Company proximately caused injuries and damages to Plaintiff Gwendolyn Hezron, including but not limited to (a) permanent hearing loss, (b) mental and emotional injuries, (c) past and future medical

expenses, (d) past and future pain and suffering, (e) past and future emotional distress, (f) past and future loss of enjoyment of life, (g) past and future mental disability, (h) trauma, (i) fear, (j) fright, (k) embarrassment, (l) and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.  As of the date of this Complaint for damages, Plaintiff Gwendolyn Hezron has not recovered from her injuries, which are therefore alleged to be permanent in nature.

44. As a result of the aforementioned product defect The Boeing Company proximately caused injuries and damages to Plaintiff Guzman, including but not limited to (a) severe mental, and emotional injuries, (b) past and future medical expenses, (c) past and future pain and suffering, (d) past and future emotional distress, (e) past and future loss of enjoyment of life, (f) past and future mental disability, (g) past and future mental disability, (h) trauma, (i) fear, (j) fright, (k) embarrassment, (l) and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.

## COUNT I

### Negligence

45. Plaintiffs reassert, reallege and incorporate by reference paragraphs 1 through 44 as though fully set forth at length.

46. Defendant Boeing owed a duty of care to the Plaintiffs to use reasonable care in connection with the design, development, testing, inspecting, manufacture, marketing, selection of components, systems and assemblies, distribution, sale, product support for, including product support materials and manuals, airworthiness and continuing airworthiness of the accident aircraft.

47. It was foreseeable that the acts or omissions of Defendant Boeing would create an unreasonable risk of harm and injury to Plaintiffs.

48. Notwithstanding this actual knowledge, Defendant Boeing negligently, carelessly and

recklessly failed to timely apprise owners and operators, the Federal Aviation Administration and others of the defects in and the unsuitability of the subject aircraft.

49. Defendant Boeing was negligent, by act or omission and breached its duty of care owed to the Plaintiffs in one or more of the following respects, by:

a. Failing to reasonably and properly design the subject aircraft in a manner suitable for its intended application and free of defects;

b. Failing to reasonably and properly design the subject aircraft's fuselage crown skin in a manner suitable for its intended application and free of defects;

c. Failing to reasonably and properly manufacture the subject aircraft in a manner suitable for its intended application and free of defects;

d. Failing to reasonably and properly manufacture the subject aircraft's fuselage crown skin in a manner suitable for its intended application and free of defects;

e. Failing to reasonably and properly select and inspect aircraft components, including the fuselage, as well as other components, to ensure they were suitable for their intended application and otherwise adequate in quality and/or performance for the subject aircraft;

f. Failing to reasonably and timely notify and warn the FAA and other regulatory authorities regarding the defects in the subject aircraft:

g. Failing to notify the public at large, including owners, airlines, operators and service facilities, regarding the defects and dangerous conditions in the subject aircraft;

h. Failing to correct known defects in design, manufacture and in components utilized in the subject aircraft;

i.   Failing to comply with their responsibilities as type certificate holder pertaining to design, manufacture, testing, identifying, correcting and warning of defects in the subject aircraft;

j.   Failing to reasonably and properly instruct, warn or otherwise provide information regarding the unsuitability of the subject aircraft;

k.   Failing to reasonably and properly test and analyze the accident aircraft for its intended application prior to or even after certification to ascertain the true nature of the defects and dangerous conditions in the subject aircraft;

l.   Failing to warn that the accident aircraft, including its fuselage, was inadequate for its intended use;

m.   Failing to comply with their responsibilities as type certificate holder pertaining to airworthiness and continued airworthiness of the subject aircraft;

n.   Unreasonably, improperly and contrary to regulation, certifying to the FAA and/or other appropriate regulatory authorities that the subject aircraft was airworthy and suitable for its intended application when in fact it was not;

o.   Designing and manufacturing the subject aircraft with inadequate component parts related to quality and performance;

p.   Failing to recall and/or retrofit the subject aircraft;

q.   Failing to issue adequate warnings or instructions including instructions concerning the risks posed to passenger and flight crew health and safety concerning the potential for channeling (thin out) of the fuselage crown skin under normal operations after Defendant learned or should have learned about this danger;

10

r.  Failing to failed to retrofit and or modify or redesign or place and or recommend the replacement of a properly manufactured part to prevent or minimize the danger of associated with the fuselage crown skin after Defendant learned or should have learned about this danger;

s.  Failing to issue updated maintenance and or inspection instructions to prevent and or minimize the danger of channeling or "thin-out" of the fuselage crown skin;

t.  Failing to ensure that the subject aircraft conformed to Defendant Boeing's express or implied warranties;

u.  Failing to ensure that the subject aircraft met the applicable specifications and performance standards.

v.  Such other acts of negligence as will appear during the course of discovery to be liability-producing conduct on the part of Defendant Boeing; and

w.  Otherwise being negligent under the circumstances.

50.  As a direct and proximate result of the foregoing, the Plaintiffs suffered injuries and damages described in Paragraphs 39-44.

51.  As a direct and proximate result of the foregoing breaches of duty, the subject aircraft suffered a rapid decompression, resulting in serious injuries to the Plaintiffs, for which they seek damages, compensation and financial recovery as previously alleged and as permitted by applicable law.

WHEREFORE, each Plaintiff prays for judgment against Defendant Boeing, in an amount sufficient to fully and fairly compensate the Plaintiffs for their injuries and damages, for the costs of this action, for interest as allowed by law and for all other just and proper relief in the premises.

11

Plaintiffs respectfully request that this Court enter judgment against The Boeing Company in an amount to be determined at trial, including damages authorized by G.L. c. 229, § 6, plus Plaintiffs' reasonable costs and attorneys' fees, and grant such other and further relief as the Court deems just.

## COUNT II

### Strict Liability

52. Plaintiffs reassert, reallege and incorporate by reference paragraphs 1 through 51 as though fully set forth at length.

53. At all times material hereto, the Defendant Boeing was in the business of designing, developing, manufacturing, testing, servicing, marketing, distributing, assembling, supplying and selling the subject aircraft and providing accompanying product support, product support materials, airworthiness and continuing airworthiness materials with respect thereto, including pilot operating instructions and flight manuals, and did in fact design, develop, manufacture, sell or otherwise place into the stream of commerce in the ordinary course of business the subject aircraft.

54. Prior to and on October 26, 2010 the subject aircraft was being operated and used for the purpose and in the manner for which it was designed, developed, manufactured, assembled, tested, serviced, distributed and sold and intended to be used, all in a manner foreseeable to the Defendant.

55. At all times material hereto, the subject aircraft was defective in design and/or manufacture, was defective for lack of warnings and instructions, and was in an unreasonably dangerous, defective and unsafe condition, which defects were a substantial factor and/or a proximate cause in the happening of the injury causing incident.

56. The defects in the subject aircraft consisted of, but are not limited to, the following:

    a.   Defective manufacture of the subject aircraft;

    b.   Defective design of the subject aircraft;

c. Defective and inadequate written instructions, warnings, flight manuals, flight procedures and other product support information concerning the design, manufacture, operation and flight characteristics of the subject aircraft;

d. Failing to warn of the defects in the design, development and/or manufacture of the subject aircraft;

e. Failing to warn of the lack of airworthiness and continued airworthiness of the subject aircraft;

f. Designing, manufacturing and selling the subject aircraft without performing proper testing during certification, manufacture and/or any time thereafter;

g. Defective design and manufacture by selecting a fuselage and other and systems which were not suitable for the subject aircraft;

h. Certifying the accident aircraft, without proper testing, both pre- and post manufacture;

i. Defective and inadequate warnings concerning fuselage inspections;

j. Designing and manufacturing the subject aircraft with defective and inadequate component parts and/or otherwise failing to incorporate into the design and manufacture suitable components, systems and assemblies that would eliminate or reduce the risk or hazard created by such defects;

k. Designing and manufacturing the accident aircraft, with skin (also known as fuselage) that was too thin for use with the subject aircraft; which was incompatible for use with the subject aircraft;

l. Designing and manufacturing the subject aircraft with a fuselage and/or other components, systems and assemblies, that were unsuitable for their intended

application and were otherwise defective and inadequate in quality and/or

performance;

m.  Designing, manufacturing, selling and/or supplying a defective subject aircraft

and/or failing to correct  the same once said defects in design and manufacture

became known;

n.  Failing to correct known defects in, and/or failing to recall, replace and/or retrofit

the subject aircraft.

o.  Failing to ascertain and insure that the subject aircraft's fuselage was, in all

respects, compatible for use in the accident aircraft;

p.  Such other defects as will appear during the course of discovery to be liability-

producing conduct on the part of the Defendant.

57.   At all times material hereto, the subject aircraft was in substantially the same before the

injury producing incident as when it left the Defendant's control, and were used in the foreseeable

manner and for the particular purpose which the Defendant knew or should have known that its

product would be used.

58. At all times material hereto, and at all times prior to the injury producing incident the

Defendant had the responsibility under the Federal Aviation Regulations as the owner and/or holder of

the type certificate, to make certain that any defects in their products, as designed, developed,

manufactured and/or sold, or which defects were discovered through field and service experience, were

corrected prior to causing injury so long as the type certificate was not surrendered.

59.   Upon information and belief, at all times material hereto, and at all times prior to the

injury producing incident. the Defendant was aware of numerous prior events due to the subject

aircraft's defective design, development and manufacture and were also aware of the defects in product

14

support materials, including inadequate instructions, manuals and/or warnings related thereto, and had or should have had the means to correct the same, especially since the Defendants knew that the failures as alleged herein continued to occur.

60. Upon information and belief the Defendant also failed in their post-sale duty to warn of or otherwise remedy the defects and danger posed by the thin fuselage, yet Defendant failed to issue any appropriate warnings or remediation related thereto.

61. As a direct and proximate result of the foregoing, the Plaintiffs suffered injuries and damages described in Paragraphs 39-44.

62. As a direct and proximate result of the foregoing breaches of warranties, the subject aircraft suffered a rapid decompression, resulting in serious injuries to the Plaintiffs, for which they seek damages, compensation and financial recovery as previously alleged and as permitted by applicable law.

WHEREFORE, each Plaintiff prays for judgment against Defendant Boeing, in an amount sufficient to fully and fairly compensate the Plaintiffs for their injuries and damages, for the costs of this action, for interest as allowed by law and for all other just and proper relief in the premises. Plaintiffs respectfully request that this Court enter judgment against The Boeing Company in an amount to be determined at trial, including damages authorized by G.L. c. 229, § 6, plus Plaintiffs' reasonable costs and attorneys' fees, and grant such other and further relief as the Court deems just.

## COUNT III

### Breach of Warranty

Plaintiffs reassert, reallege and incorporate by reference paragraphs 1 through 62 as though fully set forth at length.

63. Defendant Boeing is now, and was at all times herein mentioned, a merchant

engaged in the business of manufacturing, supplying and selling aircraft and component parts, including the subject aircraft and component parts.

64. The aircraft and component parts are "goods" within the meaning of MASS. GEN. LAWS c. 106, § 2-104.

65. Defendant Boeing is a merchant with respect to goods such as the subject aircraft and component parts incorporated on the subject aircraft.

66. Defendant Boeing described and advertised its goods for sale.  Such descriptions and advertisements included, but were not limited to, advertising, brochures, instructions, manuals, specification sheets, internet advertising and other product statements.  The descriptions and affirmations concerning the goods resulted in express warranties that the goods were described and safe for their intended use.  In addition, the defendant provided an express warranty for the aircraft and component parts.

67. The descriptions, affirmations, and express warranties became part of the basis of the bargain of its sales and there warranties ran to plaintiffs.

68. The defendant impliedly warranted, pursuant to G.L. c. 106, § 2-314m that its goods were merchantable, safe, and fit for ordinary purposes for which such products are used, and that they were properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on the defendant's descriptions, containers and labels.  This implied warranty of merchantability ran from the defendant to the plaintiffs.

69. As further result of Defendant Boeings' sales activities, the defendant impliedly warranted that its individual goods were fit for their particular purpose, it knew that its skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of its individual goods.  This implied warranty of fitness for a particular purchase ran to the plaintiffs.

70. Because the defendant is a merchant as to its goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe.  This implied warranty ran to the plaintiffs.

71. By selling defective goods, Defendant Boeing breached its express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

72. Any disclaimers and limitations of the above warranties by Defendant Boeing constitute bad faith in commercial dealings, are unconscionable, and caused the said warranties to fail their essential purpose.

73.  Defendant Boeing did breach their implied warranties of merchantability in that:

    a.  Defendant, a merchant in the goods of the type used by Plaintiffs, did not have the same adequately designed, developed, tested, inspected, assembled and manufactured;

    b.  Said goods were not of fair and average quality in the trade in which the Defendant engages;

    c.  Said goods were not fit for the ordinary purpose for which said goods were used;

    d.  Said goods were not in conformity with, in so far as safety was concerned, as those generally used in the trade or business in which the Defendant engaged;

    e.  Defendant Boeing knew or should have known that the goods were not fit for their ordinary purposes;

f.  Defendant Boeing knew or should have known that said goods were defectively designed, developed, manufactured, assembled, tested, sold, inspected, and marketed and as such were dangerous to the Plaintiffs;

g.  Defendant Boeing knew or should have known that said goods were inadequate for the purposes intended and were dangerous to the safety of Plaintiffs and others in their position;

h.  Said goods did not conform to the normal commercial standards of the trade in which the Defendant engaged.

74.  Defendant Boeing did breach their implied warranties of fitness for a particular purpose in that:

a.  The Defendant knew or should have known that said goods would be used by Plaintiffs and others in their position;

b.  The Defendant knew or should have known that Plaintiffs and others in their position did and would rely upon the Defendant to furnish goods which were not defective;

c.  The Defendant knew or should have known that the goods were not adequately and properly designed, developed, manufactured, assembled, tested, sold, inspected, supported, marketed, supplied or placed into the stream of commerce and therefore would not be fit for the purposes for which Plaintiffs and others in their position would be using them;

d.  The Defendant failed to provide a safe and non-defective subject aircraft, including its fuselage, which would not cause injury, harm or damage to Plaintiffs and others in their position.

75. Defendant Boeing's activities and conduct, as noted herein, were outrageous and conducted with reckless disregard for the safety of plaintiffs.

76. By filing this complaint, plaintiffs have provided Defendant Boeing with the notice of breach required by the Uniform Commercial Code and other applicable section of Massachusetts General Laws.

77. As a direct and proximate result of the foregoing, the Plaintiffs suffered injuries and damages described in Paragraphs 39-44.

78. As a direct and proximate result of the foregoing breaches of warranties, the subject aircraft suffered a rapid decompression, resulting in serious injuries to the Plaintiffs, for which they seek damages, compensation and financial recovery as previously alleged and as permitted by applicable law.

WHEREFORE, each Plaintiff prays for judgment against Defendant Boeing, in an amount sufficient to fully and fairly compensate the Plaintiffs for their injuries and damages, for the costs of this action, for interest as allowed by law and for all other just and proper relief in the premises. Plaintiffs respectfully request that this Court enter judgment against The Boeing Company in an amount to be determined at trial, including damages authorized by G.L. c. 229, § 6, plus Plaintiffs' reasonable costs and attorneys' fees, and grant such other and further relief as the Court deems just.

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment against the defendant, The Boeing Company, in an amount to be determined at trial, plus Plaintiffs' reasonable costs and attorneys' fees and grant such other and further relief as the Court deems meet and just.

## PROXIMATE CAUSE

79. Plaintiffs reassert, reallege and incorporate by reference paragraphs 1 through 78 as though fully set forth at length.

80. The acts and omissions and/or negligence of Defendant Boeing caused injuries and damages to the Plaintiffs as identified below;

81. The product defects as alleged and/or the acts and omissions and/or negligence of Defendant Boeing proximately caused injuries and damages to the Plaintiffs as identified below in this Complaint.

## DAMAGES

82. Plaintiffs reassert, reallege and incorporate by reference paragraphs 1 through 81 as though fully set forth at length and further states as follows:

83. Defendants proximately caused injuries and damages to Plaintiff-Carnevale including but not limited to, severe emotional distress, injury, past and future medical expenses, past and future pain and suffering, past and future emotional distress, past and future mental disability, trauma, fear, fright, embarrassment, and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.

84. Defendants proximately caused injuries and damages to Plaintiff-Colombo including but not limited to, severe emotional distress, to wit, physical injury including but not limited to severe bleeding from the nose and severe headaches, past and future medical expenses, past and future pain and suffering, past and future emotional distress, past and future mental disability, trauma, fear, fright, embarrassment, and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial.

85. Defendants proximately caused injuries and damages to Plaintiff-Daniels including, but not limited to, permanent hearing loss, tinnitus, emotional distress, past and future medical expenses, past and future pain and suffering, past and future emotional distress, past and future mental disability, trauma, fear, fright, embarrassment, and any and all special and general damages allowed by

law or otherwise, all in an amount to be proven at trial. The injuries in this complaint are alleged to be permanent in nature.

86. Defendants proximately caused injuries and damages to Plaintiff-Hezron Farrell including, but not limited to, ear injury, permanent hearing loss, emotional distress, past and future medical expenses, past and future pain and suffering, past and future emotional distress, past and future mental disability, trauma, fear, fright, embarrassment, and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial. The injuries in this complaint are alleged to be permanent in nature.

87. Defendants proximately caused injuries and damages to Plaintiff-Gwendolyn Farrell including, but not limited to, permanent hearing loss, emotional distress, past and future medical expenses, past and future pain and suffering, past and future emotional distress, past and future mental disability, trauma, fear, fright, embarrassment, and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial. The injuries in this complaint are alleged to be permanent in nature.

88. Defendants proximately caused injuries and damages to Plaintiff-Guzman including but not limited to, severe emotional distress, past and future medical expenses, past and future pain and suffering, past and future emotional distress, past and future mental disability, past and future economic loss, trauma, fear, fright, embarrassment, and any and all special and general damages allowed by law or otherwise, all in an amount to be proven at trial. The injuries in this complaint are alleged to be permanent in nature.

## REQUEST FOR RELIEF

For the above reasons, the Plaintiffs ask that the Court award them the following:

1.  Compensatory damages for physical and emotional injury;

2.  Economic damages for financial loss, past and future;

3.  Prejudgment interest;

4.  Attorneys fees, disbursements and litigation expenses;

5.  Any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand trial by jury as to all counts and issues so triable.

Dated: this 16th day of October, 2013 in Marblehead, MA.

Respectfully submitted,

THE PLAINTIFFS
Cheryl Carnevale
Kimberly Colombo
Stephen Daniels
Hezron Farrell
Gwendolyn Farrell
Adriana Guzman

By Their Attorney

/s/ Elaine Whitfield Sharp

_____
ELAINE WHITFIELD SHARP
BBO No. 565522
WHITFIELD SHARP & SHARP, LLC
Attorneys and Counselors at Law
196 Atlantic Avenue
Marblehead, MA 01945
Tel: 781.639.1862
Fax: 781.639.1771
elainesharp@sharplaw.net