UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| ADRIANA GUZMAN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| v. | ) | | CIVIL ACTION |
| | ) | | NO. 13-12615-JGD |
| THE BOEING COMPANY, | ) | | |
| | ) | | |
| Defendant. | ) | | |

# MEMORANDUM OF DECISION AND ORDER
## ON MISCELLANEOUS POST-TRIAL MOTIONS

February 6, 2019

DEIN, U.S.M.J.

## I. INTRODUCTION

On October 26, 2010, American Airlines flight 1640 experienced a rapid decompression while on route from Miami to Boston. The aircraft returned to Miami and the passengers were placed on a second aircraft to resume their journey to Boston. The plaintiff, a passenger on the flight, subsequently filed suit against The Boeing Company ("Boeing"), the manufacturer of the plane and the defendant in the instant case. Boeing agreed to be held liable for any proximately caused damages.

After a nine day trial on the issue of damages, the jury returned a verdict on April 12, 2018, finding that the plaintiff had suffered $2.2 million in damages, but that she had failed to mitigate $726,000 of those damages. (See Docket No. 348). On April 19, 2018, this Court entered judgment for the plaintiff, which included prejudgment interest, for a total judgment of $2,271,651.60. (See Docket No. 349).

Presently before the court are the following post-trial motions that have been filed by the parties: (1) plaintiff's "Bill of Costs" (Docket No. 369) and defendant's "Motion for Disallowance and Objections to Plaintiff's Bill of Costs" (Docket No. 376); (2) defendant's "Motion to Compel Resolution of Outstanding Expert Deposition Fee Issues" (Docket No. 400); (3) plaintiff's "Motion to Alter or Amend Judgment" (Docket No. 383); and (4) defendant's "Motion for Stay of Execution of Judgment and Waiver of Bond Requirement" (Docket No. 353). Each motion will be addressed in turn. Boeing's motion for a new trial or remittitur under Fed. R. Civ. P. 59 and 50(b) (Docket No. 380) is addressed in a separate opinion.

## II. DISCUSSION

### A. Plaintiff's Bill of Costs and Defendant's Objections thereto

After the entry of judgment, the plaintiff filed a bill of costs, seeking to tax the defendant for costs incurred by the plaintiff, pursuant to Fed. R. Civ. P. 54(d). (See Docket No. 369). The defendant filed a "Motion for Disallowance and Objections to Plaintiff's Bill of Costs," objecting to fees for printed or electronically recorded transcripts and fees for witnesses.[1,2]

---

[1] In its motion, the defendant also objects to the plaintiff's (1) fees of service of summons and subpoenas, (2) fees and disbursement for printing, and (3) compensation of interpreters and costs of special interpretation services. (Docket No. 376-2 at 4, 7, 8). However, at a hearing held on August 6, 2018, Boeing conceded that the plaintiff's fees of service of summons and subpoenas were compensable, and indicated that it did not object to plaintiff's fees and disbursements for printing. At the hearing Boeing also reiterated its position that only $1,195 for compensation of interpreters and costs of special interpretation services was compensable. Subsequent to the hearing, the plaintiff submitted a revised bill of costs with $1,195 for compensation of interpreters and costs of special interpretation services. (See Docket No. 406). Accordingly, this court need not address these three line items.

[2] Boeing's motion does not address whether it believes the fees of the clerk are compensable. However, at the August 6 hearing defense counsel stated that "obviously the fees of the clerk are not compensable," but did not elaborate. It is unclear if this was a misstatement. To the extent that defense counsel intended to object to the taxation of the fees of the clerk, the defendant's objection is meritless, as the fees of the clerk are expressly provided for under 28 U.S.C. § 1920(1).

(See Docket No. 376).  For the reasons discussed below, the defendant's motion is ALLOWED IN PART and DENIED IN PART.

**Standard of Review**

Under Fed. R. Civ. P. 54(d), "costs – other than attorney's fees – should be allowed to the prevailing party," unless a rule of civil procedure, a federal statute, or a court order provide otherwise.  Pursuant to 28 U.S.C. § 1920, the costs that are recoverable under Rule 54(d) include fees for printed or electronically recorded transcripts necessarily obtained for use in the case, and fees and disbursements for witnesses.  The specific witness fees that are recoverable are detailed in 28 U.S.C. § 1821.

A court's ability to deny costs that are eligible for taxation under Rule 54(d) operates with a "background presumption favoring cost recovery for prevailing parties."  In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig. (San Juan Dupont Plaza Hotel Fire Litig.), 994 F.2d 956, 962 (1st Cir. 1993).  Thus, "[w]hen denying costs, a district court must offer an explanation for doing so unless the basis for denying costs is 'readily apparent on the face of the record.'"  B. Fernandez & HNOS, Inc. v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008) (quoting San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d at 963).

**Deposition Transcripts**

The defendant contests the deposition transcript fees for Dr. Biswas ($1,080), Dr. Podbros ($1,117.50), Dr. Buza ($1,144.60),[3] and the plaintiff ($745, $1,127.70, and $904.40 for

---

[3] In its objection to the plaintiff's bill of costs, the defendant states that this deposition fee belongs to an "unidentified" individual, but the plaintiff clarifies in her opposition that this fee corresponds to Dr. Buza.

the plaintiff's three depositions), arguing that their depositions were not obtained for use at trial.  The defendant also takes issue with the deposition costs associated with two witnesses who had previously been parties to the present litigation against the defendant.  Finally, the defendant contests the video costs associated with Dr. Marmar's deposition. [4]

Under 28 U.S.C. § 1920, fees for transcripts "necessarily obtained for use in the case," are recoverable.  Such transcripts are necessarily obtained for use in the case if they are "either introduced in evidence or used at trial."  Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S. Ct. 571, 88 L. Ed. 2d 556 (1985).  Deposition transcript fees may also be recoverable "if special circumstances warrant it."  Id.  However, using deposition transcripts to merely prepare for trial or in legal memoranda is not sufficient to impose costs.  Haemonetics Corp. v. Fenwal, Inc., 863 F. Supp. 2d 110, 116-17 (D. Mass. 2012); Walters v. President & Fellows of Harvard Coll., 692 F. Supp. 1440, 1443 (D. Mass. 1988) ("Although these depositions may well have been necessary to the thorough preparation of the plaintiff's case, she has not demonstrated any special circumstances warranting the recovery of the associated costs.").

The plaintiff argues generally that the deposition transcripts of the plaintiff and three doctors were used to defend against trial objections relating to their deposition testimony, but fails to cite any specific examples.  The record reflects that plaintiff's counsel read from Dr.

---

[4] The defendant also argued that the expedited cost of Jorge Chinchilla's deposition transcript should be disallowed, but the plaintiff has removed this expense from her revised bill of costs.  (See Docket No. 406).

Buza's deposition transcript on the second day of trial in response to an objection from defense counsel. (See Tr. II:128-29). However, the record does not show that the plaintiff used the other witnesses' deposition transcripts at trial. The plaintiff has also failed to articulate any special circumstances warranting the recovery of these fees. Thus, the defendant is only responsible for paying the deposition transcript costs of Dr. Buza, and shall not be taxed on the costs of the deposition transcripts for Dr. Biswas, Dr. Podbros, and the plaintiff.

The defendant also argues that the deposition transcript fees for former plaintiffs Cheryl Carnevale and Gwendolyn Farrell should not be included because those depositions were taken in connection with their individual claims. The defendant contends that because those claims were settled before this case went to trial, the former plaintiffs already paid the deposition costs in fee agreements with their own attorneys and the defendant should not be made responsible for them. The plaintiff does not address the issue of whether such costs were previously paid by the former plaintiffs, but contends that the defendant is responsible for paying them because these depositions were taken with the knowledge that they would be relevant to everyone's claims, including the plaintiff's. The court agrees with the defendant that it would be unreasonable to "double count" the costs of these depositions by requiring Boeing to pay for fees that were already paid by former plaintiffs who are no longer parties to the present litigation and whose cases were settled without obligating Boeing to pay for the transcripts.

Lastly, the defendant contends that it should not be taxed on the video costs associated with Dr. Marmar's deposition. This court agrees. The plaintiff has failed to advance any argument as to why it was necessary to have the deposition videotaped. Dr. Marmar appeared at

trial. Accordingly, the costs incurred to videotape Dr. Marmar's deposition will be disallowed.

See Miller v. Nat'l R.R. Passenger Corp., 157 F.R.D. 145, 145-46 (D. Mass. 1994) (costs of

videotaping deposition disallowed where costs were not necessary and did not save time).

### Witness Fees

The defendant argues that it should only be required to pay the per diem attendance

rate for the plaintiff's witnesses, and not the witnesses' travel or subsistence costs. "Section

1920(3) permits witness expenses to be taxed within the limits set forth in 28 U.S.C. § 1821."

Haemonetics Corp., 863 F. Supp. 2d at 117 (citation omitted). Under § 1821, witnesses are

entitled to reasonable travel expenses, a flat fee of $40 per day of trial attendance, and a sub-

sistence allowance for witnesses who are required to stay overnight in the area to participate in

the trial. See Greater N.Y. Mut. Ins. Co. v. Lavelle Indus. Inc., No. CIV.A. 13-10164-MBB, 2017

WL 1496914, at *3 (D. Mass. Apr. 25, 2017). "A witness's compensation is not limited solely to

days the witness testifies, 'but may also be awarded for each day the witness *necessarily*

attends trial [and] time spent during delays and temporary adjournments.'" Haemonetics Corp.,

863 F. Supp. 2d at 117 (emphasis and alteration in original) (quoting Soberay Mach. & Equip.

Co. v. MRF Ltd., 181 F.3d 759, 772 (6th Cir. 1999)).

First, the defendant contends that it should not be required to pay any of the travel

costs incurred by the plaintiff's witnesses because such costs were incurred as a result of the

plaintiff's decision to bring suit in Massachusetts rather than Florida, which would have been

closer for the witnesses coming from Costa Rica. This court finds the defendant's reasoning

unpersuasive. Wherever a plaintiff chooses to bring suit, her witnesses will necessarily incur

*some* expense to come to the courthouse to testify. The choice of venue only affects the

6

amount of travel required, not whether travel is required.  For example, a witness who lives

locally would still be entitled to the cost of driving to the courthouse to testify.  See 28 U.S.C.

§ 1821.  The defendant has provided no explanation, let alone case law, in support of the

proposition that a plaintiff should receive *no* compensation for witness travel costs – not even

nominal compensation – for bringing suit in a venue that the defendant believes is less

convenient for the witnesses.  Further, the defendant fails to acknowledge that the two

percipient witnesses who resided in Massachusetts at the time of trial would have incurred

*greater* travel expenses if the trial had been held in Florida.  In either scenario, the witnesses

from Costa Rica would incur substantial expenses traveling to the United States.  Thus, the

defendant is not excused from paying for witnesses' travel expenses merely because the

plaintiff brought suit in Massachusetts.

Second, the defendant contends that it should not be required to pay the subsistence

costs of the three witnesses who traveled from out-of-state because they did not provide the

defendant with receipts from their stay.  Section 1821 provides that "[a] subsistence allowance

shall be paid to a witness when an overnight stay is required at the place of attendance because

such place is so far removed from the residence of such witness as to prohibit return thereto

from day to day."  28 U.S.C. § 1821.  As to the amount of such allowance, "the subsistence cost

for a witness cannot exceed the allowable maximum per diem rate for official travel by federal

government employees in the area of attendance."  Bucksar v. Mayo, No. CIV.A. 11-10134-RBC,

2013 WL 1320445, at *2 n.4 (D. Mass. Mar. 28, 2013); see 28 U.S.C. § 1821(d)(2) and (d)(3).[5]

---

[5]  In April 2018, the per diem rate in Boston was $267 for lodging and $69 for meals and incidentals.  See
FY 2018 Per Diem Rates for Massachusetts, https://www.gsa.gov/travel/plan-book/per-diem-rates/per-
diem-rates-lookup/?action=perdiems_report&state=MA&fiscal_year=2018&zip=&city=Boston.  The

However, in order to recover such costs, the plaintiff should provide receipts or other evidence of the expenses incurred. See Osorio v. One World Techs., Inc., 834 F. Supp. 2d 20, 24 (D. Mass. 2011); Sharp v. Hylas Yachts, Inc., No. CV 11-11814-JCB, 2016 WL 10654435, at *3 (D. Mass. June 14, 2016). Accordingly, the plaintiff shall provide the defendant with lodging and meal receipts, and may recover costs up to the government per diem rate. Any subsistence costs claimed for which the plaintiff does not provide receipts will not be recoverable.

Lastly, the defendant contends that it should not be responsible for the portion of Dr. Cambronero's and Pabla Guzman's subsistence costs relating to their depositions before trial. At a pre-trial hearing, defense counsel requested that the plaintiff's foreign witnesses be made available forty-eight hours before their trial testimony so that defense counsel could depose them. (See Docket No. 277; Docket No. 284 at 34). Accordingly, these witnesses arrived in Boston ahead of their testimony in order to be deposed forty-eight hours beforehand. The parties disagree as to whether defense counsel had the opportunity to depose these witnesses during discovery, and which party bears responsibility for the failure to do so. Primarily on this basis, the parties dispute whether the defendant must pay subsistence costs for the days of trial wherein these witnesses were deposed. This court concludes that defense counsel's request necessitated these witnesses' presence at trial prior to their actual testimony and that, as a general matter, it is not unreasonable to seek four days of subsistence fees for Dr. Cambronero and three days of subsistence fees for Pabla Guzman, who both travelled from

---

plaintiff cites in her brief that the allowable subsistence allowance in Boston is $238 per day. (See Docket No. 405 at 6). This number appears to be based on the Taxation of Costs guide provided by the District of Massachusetts, which has a listed drafting date of December 28, 2000.

Costa Rica for two days of trial.[6]  Accordingly, the defendant's motion as to witness fees is DENIED.

In summary, the defendant's "Motion for Disallowance and Objections to Plaintiff's Bill of Costs" (Docket No. 376) is ALLOWED IN PART and DENIED IN PART.  Specifically, the defendant's motion is ALLOWED with respect to the deposition transcript fees of Dr. Biswas, Dr. Podbros, and the plaintiff.  The defendant's motion is also ALLOWED with respect to the deposition costs associated with Cheryl Carnevale and Gwendolyn Farrell and the video costs associated with Dr. Marmar's deposition.  The plaintiff shall provide the defendant with lodging and meal receipts to recover subsistence costs.  The defendant's motion is otherwise DENIED and the plaintiff's revised bill of costs (Docket No. 406) is ALLOWED as to the remaining costs.

**B.    Defendant's Motion to Compel Resolution of Outstanding Expert Deposition Fee Issues**

Boeing has also filed a "Motion to Compel Resolution of Outstanding Expert Deposition Fee Issues" (Docket No. 400).  The defendant argues that prior to the taking of expert depositions in this case, the parties entered into an agreement as to expert deposition fees. One of plaintiff's experts, Dr. Biswas, purported to charge defense counsel for fees outside of the fee agreement, which defense counsel refused to pay.  On day two of trial, plaintiff's counsel indicated that Dr. Biswas was refusing to testify unless Boeing paid the outstanding fees.  (Tr. II:139-40, 143).  This court instructed Boeing to pay Dr. Biswas the outstanding fees so that she would appear for trial, but indicated that the underlying issue of which party was

---

[6]  Pabla Guzman only testified on one day of trial, but the plaintiff sought attendance fees for two days of trial.  The defendant has not contested this.

responsible for payment would be resolved after trial if necessary.  (Id. 144).  Boeing now asks

that this court resolve the issue in its favor.  Additionally, Boeing asks this court to order the

plaintiff to pay expert deposition fees for Boeing's experts.  As discussed below, Boeing's

motion is ALLOWED IN PART and DENIED IN PART.

The defendant contends that the parties entered into an expert deposition fee

agreement as to the payment of expert deposition costs.  The defendant has produced an email

from defense counsel listing the proposed terms of this agreement.  The proposed agreement

provided that the deposing party would pay a reasonable hourly rate to the expert being

deposed for the time spent traveling to and from the deposition, attending the deposition, and

gathering materials responsive to the subpoena, but would not pay for time spent preparing for

the deposition or reviewing the deposition transcript.  The email, written from defense counsel

to plaintiff's counsel, also indicates that "[t]o the extent that you disagree with our position, we

should have a brief call Monday and then bring this to the court's attention."  (Docket No. 401,

Ex. 5).  As far as this court is aware, neither party subsequently contacted the court about being

unable to reach such an agreement on expert deposition fees, and the plaintiff never

challenged these terms before the depositions went forward.  In her opposition, the plaintiff

does not address whether the parties in fact reached such an agreement.  (See Docket No. 403).

In a subsequent status report filed with the court, the plaintiff states that (1) no such

agreement existed *prior to* defense counsel's email; (2) the parties did not have an agreement

"that differs in any way from the text and the spirit of [Fed. R. Civ. P.] 26(b)(4)(E)(i)"; and (3) the

parties did not specifically enter into an agreement as to Dr. Biswas's fees because plaintiff's

counsel "was not and is not an agent for Dr. Biswas."  (Docket No. 408 at 1, 3).  None of these

arguments squarely addresses whether plaintiff's counsel did in fact agree to the terms set forth in defense counsel's email. Because the evidence indicates that an expert deposition fee agreement was proposed, the defendant asserts that the proposal was accepted, the plaintiff gingerly avoids denying that plaintiff's counsel assented to this agreement, the defendant apparently charged the plaintiff in accordance with the terms of the email, and there is no indication that the parties were unable to reach an agreement such that they brought the issue to the court's attention, this court finds that the parties did in fact enter into such an agreement.

### i. Dr. Biswas's Deposition Fees

On the basis of the parties' expert deposition fees agreement, the defendant contests five line items that Dr. Biswas purported to charge to defense counsel: (1) $4,800 for "Retrieving and Organizing Files asked for by opposing counsel"; (2) $2,400 for "Responding, organizing correspondence and billing asked for by opposing counsel"; (3) $2,400 for "Scheduling, Cancelling the 11/27 date and Rescheduling deposition"; (4) $900 for "Billing correspondence"; and (5) $1,500 for "Reading and signing Deposition dated 12/11/17." (See Docket No. 401, Exs. 7, 9). The court will address each item in turn.

### Fees for Organizing Items for Opposing Counsel

Dr. Biswas charged Boeing for eight hours of time spent "Retrieving and Organizing Files asked for by opposing counsel" and four hours of time spent "Responding, organizing correspondence and billing asked for by opposing counsel." (See Docket No. 401, Ex. 7). The total amount charged for these activities was $7,200. (See id.). The parties' expert deposition fee agreement provided that the deposing party would pay for time spent gathering materials

responsive to the subpoena.  Dr. Biswas produced five exhibits in response to the subpoena, which consisted of ninety-eight pages of correspondence between the plaintiff and Dr. Biswas, a thumb drive of files that the plaintiff provided to Dr. Biswas for review, and three articles. (See Docket No. 401, Ex. 8).  The defendant argues that Dr. Biswas could not have possibly spent twelve hours gathering these materials.  Rather, the defendant argues, Dr. Biswas charged Boeing for time spent reviewing materials in preparation for her deposition, which was expressly not covered by the parties' expert deposition fee agreement.  The plaintiff asserts that Dr. Biswas spent all of this time gathering responsive materials, noting that Boeing's subpoena included twenty-two requests for documents and other items.

Of the twelve hours Dr. Biswas billed for organizing items in preparation for her deposition, it is unclear how much time was spent gathering responsive materials and how much time was spent otherwise preparing for the deposition.  In comparison with the other experts, twelve hours spent responding to the document request appears quite excessive.  By comparison, Boeing represents that it paid the plaintiff's other experts $3,880 (Dr. Buza), $6,995 (Dr. Podbros), and $2,100 (Neville Lee) respectively for the entirety of their deposition costs – a fraction of the amount that Dr. Biswas requested for simply gathering responsive materials.  (See Docket No. 400 at 6).  Thus, the defendant should not be responsible for payment of all twelve hours billed.  Boeing contends that a reasonable fee for gathering responsive materials would be $600.  Without more specific information as to how Dr. Biswas managed her preparation time, this court finds that Boeing's proposed fee is reasonable. Accordingly, Boeing is not responsible for $6,600 of the $7,200 originally billed under these line items.

**Fee for Previously Proposed Deposition Date**

Dr. Biswas charged Boeing $2,400 for "Scheduling, Cancelling the 11/27 date and Rescheduling deposition." (Docket No. 401, Ex. 7). During discovery, defense counsel provided November 27, 2017 as a proposed deposition date for Dr. Biswas in an email to plaintiff's counsel, along with other proposed deposition dates. (Docket No. 401, Ex. 1). The email asked plaintiff's counsel to check with their experts on whether the proposed dates would work, but indicated that some dates may need to be moved if defense counsel did not receive plaintiff's supplementary discovery responses shortly. (Id.). In subsequent emails, it became clear that the proposed deposition date for another expert, Dr. Buza, would not work. (See Docket No. 401, Exs. 2, 3). Defense counsel indicated that they would like to maintain the order in which they chose to depose plaintiff's experts, which meant that the deposition dates of experts they wanted to depose after Dr. Buza would need to be pushed back. (Docket No. 401, Ex. 3). In light of this change, on November 10, 2017, plaintiff's counsel sent an email stating that they would try to send defense counsel a list of new proposed deposition dates for plaintiff's experts. (Docket No. 401, Ex. 4). Defense counsel separately received a letter from Dr. Biswas dated November 9, 2017, stating that she had received notice that defense counsel would like to depose her. (Id.).

No evidence has been provided to indicate that defense counsel ever noticed Dr. Biswas for a deposition on November 27, 2017. Rather, the record indicates that this was a proposed deposition date, subject to change, and that at least by November 10, 2017 it was clear that this deposition date would be changed. Accordingly, Dr. Biswas's charge for "cancelling" the

proposed deposition on 11/27 is unreasonable, and that cost should not be borne by the defendant.

### Fee for Billing Correspondence and for Reading and Signing Deposition

Dr. Biswas purported to charge Boeing an additional $900 for the time she spent writing a letter in response to Boeing's letter contesting portions of her bill. (Docket No. 401, Ex. 9). This fee was not covered under the parties' expert deposition fee agreement, nor is it reasonable. Thus, the defendant is not responsible for this charge. Similarly, because the agreement provided that the deposing party was not responsible for fees relating to reviewing the deposition transcript, the defendant was not responsible for paying Dr. Biswas's $1,500 fee for "Reading and signing Deposition dated 12/11/17."

In summary, Boeing's motion to compel on the issue of Dr. Biswas's deposition fees is ALLOWED.

### ii. Defendant's Experts' Deposition Fees

The defendant also contends that the plaintiff has failed to pay expert deposition fees for the defendant's experts. Specifically, the defendant asserts that Dr. Barocci, Dr. Hastings, and Jorge Chinchilla have yet to be paid. In her opposition to Boeing's motion to compel, the plaintiff indicates that none of these experts provided the plaintiff with an itemized list of their deposition costs. Rather, they only provided the plaintiff with information as to the total amount being charged. At a hearing held on August 6, 2018 regarding the parties' post-trial motions, this court instructed the defendant to have these experts provide the plaintiff with itemized bills. Additionally, this court instructed the plaintiff to submit a status report after the hearing indicating whether the defendant's experts had in fact followed up with an itemized list

of their deposition costs.  The plaintiff subsequently filed a status report, but the report focuses

entirely on the issue of Dr. Biswas's deposition fees, and does not address whether the plaintiff

received itemized bills from the defendant's experts.  Thus, this court assumes that the issue

was resolved and that itemized bills were produced.  To the extent the plaintiff has not already

done so, the bills should be paid.  Boeing's motion to compel the payment of these fees is

ALLOWED.

### C.      Plaintiff's Motion to Alter Judgment

After the conclusion of the trial, the plaintiff filed a "Motion to Alter or Amend

Judgment" (Docket No. 383).  In light of the plaintiff's subsequent "Notice of Withdrawal of her

Motion to Amend Judgment" (Docket No. 407), this motion is MOOT.

### D.      Defendant's Motion for Stay of Execution of Judgment
and Waiver of Bond Requirement

The defendant has moved for a stay of execution of judgment and a waiver of any bond

requirement under Fed. R. Civ. P. 62(b) and (d).[7]  First, the defendant requests a stay of the

execution of judgment pending the disposition of its motion under Rule 59.  Because this court

has already ruled on the defendant's Rule 59 motion in a separate order, the request for a stay

pending the disposition of the motion is MOOT.

---

[7]  At the time of the defendant's motion, Rule 62(d) was the subsection that permitted an appellant to obtain a stay of execution pending disposition of its appeal by posting a bond.  After the defendant filed this motion, the Federal Rules of Civil Procedure were revised.  Effective December 1, 2018, Rule 62 has been revised such that subsection (d) corresponds to staying an injunction pending the disposition of an appeal.  Subsection (b) is now the relevant portion of the rule pertaining to all stays by bond.  Nothing in the revisions to Rule 62 substantively changes this court's analysis.

Second, the defendant requests that the court stay the execution of judgment during the pendency of its appeal without requiring the defendant to post a bond.  Pursuant to Fed. R. Civ. P. 62, an appellant may obtain a stay of execution pending disposition of its appeal by posting a bond.  Under Local Rule 62.2, the bond is prescribed as "the amount of the judgment plus 10% of the amount to cover interest and any award of damages for delay plus $500 to cover costs, unless the court directs otherwise."  "The bond requirement is intended to protect the interest of the creditor's right under judgment during the pendency of the appeal." Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17 (1st. Cir. 2002) (citation omitted).  A bond may not be required if "(1) the defendant's ability to pay is so plain that the posting of a bond would be a waste of money; or (2) the bond would put the defendant's other creditors in undue jeopardy."  Id. (citation omitted).  The defendant relies on the former rationale to argue that no bond should be required here.  The plaintiff contends that a number of recent Boeing plane crashes potentially jeopardizes the defendant's ability to pay.

In support of its motion, the defendant has provided a copy of its quarterly report, filed with the Securities and Exchange Commission, which lists Boeing's earnings for the first quarter of 2018.  The report reflects that Boeing's net earnings exceeded $2 billion, indicating that the defendant would readily be able to pay the judgment if affirmed on appeal.  The plaintiff's argument that four other recent crashes of Boeing planes may jeopardize Boeing's future solvency is "too speculative to merit consideration."  In re Oil Spill By The "Amoco Cadiz" Off the Coast of France On Mar. 16, 1978, 744 F. Supp. 848, 850 n.2 (N.D. Ill. 1990); see Exxon Corp. v. Esso Worker's Union, Inc., 963 F. Supp. 58, 60 (D. Mass. 1997) (no bond required where defendant demonstrated "clear ability to satisfy the judgment if affirmed on appeal").

Accordingly, the defendant's motion to stay the execution of judgment pending its appeal and to waive the bond requirement is ALLOWED.

### III. <u>CONCLUSION</u>

For the reasons discussed, the motions presently before the court are ruled on as follows. The defendant's "Motion for Disallowance and Objections to Plaintiff's Bill of Costs" (Docket No. 376) is ALLOWED IN PART and DENIED IN PART. Specifically, the defendant's motion is ALLOWED with respect to the deposition transcript fees of Dr. Biswas, Dr. Podbros, and the plaintiff, the deposition costs associated with Cheryl Carnevale and Gwendolyn Farrell, and the video costs associated with Dr. Marmar's deposition. The plaintiff shall provide the defendant with lodging and meal receipts to recover subsistence costs. The defendant's motion is otherwise DENIED and the plaintiff's revised bill of costs (Docket No. 406) is ALLOWED as to the remaining costs. The defendant's "Motion to Compel Resolution of Outstanding Expert Deposition Fee Issues" (Docket No. 400) is ALLOWED. The plaintiff's "Motion to Alter or Amend Judgment" (Docket No. 383) is MOOT. Finally, the defendant's "Motion for Stay of Execution of Judgment and Waiver of Bond Requirement" (Docket No. 353) is MOOT as to the request for a stay pending the court's ruling on the Rule 59 motion, ALLOWED as to the request for a stay pending the defendant's appeal, and ALLOWED as to the waiver of the bond requirement.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge